IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DARIO DZANANOVIC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUMBLE, INC. BUZZ HOLDINGS, L.P., AND BUMBLE TRADING LLC,<br><br>Defendants. | Case No. 1:21-06925<br><br>Honorable Andrea R. Wood |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................... 2

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................................. 2

III. ARGUMENT .......................................................................................................................... 2

A. Specific Personal Jurisdiction is Proper Over All Defendants ............................................... 2

B. At the motion to dismiss stage, it is proper to resolve any real factual disputes between the complaint and any affidavits in favor of the non-moving party. ................................................. 3

C. Bumble purposefully avails themselves of the forum market by conducting extensive business activity in Illinois. .................................................................................................................... 7

    i. Bumble's marketing activities alone establish minimum contacts with the forum market. ........... 7

    ii. Extensive use of the Bumble app in Illinois also establishes minimum contacts with the forum. 8

D. The conduct at issue in this suit relates directly to Bumble's systematic exploitation of the Illinois market. ............................................................................................................................ 11

E. Bumble would not be overly burdened by this litigation. .................................................... 15

IV. CONCLUSION ..................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Cases**

Page(s)

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) .................................................................................................. 9, 10

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ....................................................................................................................... 7

*Crumpton v. Haemonetics Corp.*,
   2022 WL 952744 (N.D. Ill. Mar. 30, 2022) .................................................................. 7, 13, 14

*Curry v. Revolution Lab'ys, LLC*,
   949 F.3d 385 (7th Cir. 2020) ........................................................................................................ 3, 4

*Edelson PC v. Girardi*, ,
   2021 WL 3033616 (N.D. Ill. July 19, 2021) ................................................................................ 13

*Faith Freight Forwarding Corp. v. Ruiz*,
   1997 WL 159207 (N.D. Ill. Mar. 24, 1997) ................................................................................. 4

*Felland v. Clifton*,
   682 F.3d 665 (7th Cir. 2012) ........................................................................................................ 2

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S.Ct. 1017 (2021) .........................................................................................................*Passim*

*Gullen v. Facebook.com, Inc.*,
   2016 WL 245910 (Jan. 21, 2016) ............................................................................... 10, 11, 14, 15

*Illinois v. Hemi Grp. LLC*
   622 F.3d 754 (7th Cir. 2010) .............................................................................................. 9, 10, 15

*uBid, Inc. v. GoDaddy Grp., Inc.*,
   623 F.3d 421 (7th Cir. 2010) ..............................................................................................*Passim*

*King v. PeopleNet*,
   2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) ........................................................................ 15, 16

*Matlin v. Spin Master Corp.*,
   921 F.3d 701 (7th Cir. 2019) ........................................................................................................ 3

*McGoveran v. Amazon Web Servs.*,
   488 F. Supp 3d. 714 (S.D. Ill. 2020) .......................................................................................... 11

*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*,
   623 F.3d 440 (7th Cir. 2011) ........................................................................................................ 3

*Nelson v. Parks Indus., Inc.*,
   717 F.2d 1120 (7th Cir. 1983) ...................................................................................................... 4

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ........................................................................................................ 3

*Rogers v. City of Hobart, Ind.*,
   996 F.3d 812 (7th Cir. 2021) ........................................................................................... 3, 11, 14

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ...................................................................................................... 11

**Rules**

Federal Rule of Civil Procedure 12(b)(2) .................................................................................*passim*

I. INTRODUCTION

Bumble, in filing a motion to dismiss this suit under Federal Rule of Civil Procedure 12(b)(2), contends that the Northern District of Illinois cannot exercise personal jurisdiction over any of the entities named in this suit. Bumble also claims that the complaint is defective, and that the defect is impossible to remedy. However, as demonstrated by Bumble's extensive contacts with Illinois, both physical and digital, personal jurisdiction in the forum is proper over all three defendants.

In attempting to describe their operations, Bumble further confuses the issue by insisting that none of the three entities named in this suit are responsible for the operation of Bumble's app or engage in any conduct directed towards Illinois. The complaint, backed by the best publicly available information (including previous declarations made by Bumble's corporate officers), alleges that all three entities are collectively responsible for the violations of Illinois law this suit concerns. Reading the record in a light favorable to the non-moving party at the pleading stage, there are no grounds to dismiss any of the Defendants from the suit as improper parties.

Additionally, Bumble's attempts to distance themselves from their exploitation of the Illinois market are unconvincing. Bumble's business operations in Illinois are unquestionably systematic, and while Illinois is one target among others in their multinational strategy, the extent to which Bumble has cultivated a market for their product in Illinois evidences a deep connectedness. And although Bumble argues that its contacts take place in the internet ether away from *any* forum, Bumble has not only have reached into Illinois but it has set up shop. Specific personal jurisdiction is properly exercised over all three defendants.

This suit is wholly consistent with modern jurisprudence concerning the exercise of personal jurisdiction over national and multinational corporations. For the above reasons, dismissal of this suit under FRCP 12(b)(2) would be improper.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff brings this action against Bumble Inc., Buzz Holdings L.P., and Bumble Trading, (collectively "Defendants" or "Bumble") all of which are involved in developing, operating, and advertising the Bumble application. (ECF No. 21 ("Am. Compl.") ¶¶ 10-24). In operating the app, Defendants routinely collect and store biometric data in violation of Illinois law. (Am. Compl. ¶¶ 71-79). In support of this effort, Defendants obtain location data for all users, meaning bumble understands where and when their app is in operation. (Am. Compl. ¶¶ 30-32). Defendants maintain a lucrative business in the dating app market, and in supporting this business, advertise extensively in Illinois. (Am. Compl. ¶¶ 37-51). In addition to filing a motion to dismiss, alleging that they have no contacts with Illinois, Defendants also submit a declaration alleging that two of the defendants have no operations, no revenue, and no assets. (ECF No. 30 ("Motion")); (ECF No. 30-1 ("Rosas Dec.")). This declaration contradicts publicly available information and prior Bumble statements, as referenced in the amended complaint and discussed further below.

## III. ARGUMENT

### A. Specific Personal Jurisdiction is Proper Over All Defendants

A federal court sitting in diversity may only exercise personal jurisdiction over a defendant if the forum state's long-arm statute and the United States Constitution authorize it. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). Illinois' long-arm statute permits personal jurisdiction to the extent permitted by due process as it relates to both the Illinois and United

States constitutions. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). Illinois courts have not, to this point, articulated any meaningful differences between the state and federal standards for due process in the forum, and therefore the only instant question is whether personal jurisdiction over Defendants is permissible under federal due process. *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2011).

Exercise of specific personal jurisdiction over a defendant requires (1) "the defendant has purposefully directed its activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart, Ind.*, 996 F.3d 812, 819 (7th Cir. 2021), citing *Curry*, 949 F.3d at 398. Far from being a brightline rule, these tests serve to balance two competing values, "treating defendants fairly and protecting interstate federalism." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1025 (2021) (internal quotations omitted).

> **B. At the motion to dismiss stage, it is proper to resolve any real factual disputes between the complaint and any affidavits in favor of the non-moving party.**

On initial filing of the complaint, the plaintiff does not need to include facts alleging personal jurisdiction is proper. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020). However, once a defendant files a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the burden shifts to the plaintiff to demonstrate that personal jurisdiction is proper over the defendant. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When there has not been an evidentiary hearing, as is the case here, the plaintiff's burden is only to demonstrate a *prima facie*

3

case for personal jurisdiction. *uBid Inc. v. GoDaddy Grp., Inc.,* 624 F.3d 421, 423 (7th Cir. 2010). At this stage of proceedings, "the court must accept as true both the allegations in the complaint and any inferences which may be reasonably drawn from them." *Faith Freight Forwarding Corp. v. Ruiz*, No. 95 C 7560, 1997 WL 159207, at *1 (N.D. Ill. Mar. 24, 1997).

It is proper for the court to weigh affidavits relating to the exercise of personal jurisdiction in a motion to dismiss, but only to a limited extent. *Curry*, 949 F.3d at 393. Where affidavits filed in support of the 12(b)(2) motion conflict with the factual allegations made by the plaintiff, "[the plaintiff] is entitled to have any conflicts in the affidavits determined in [his] favor." *Curry*, 949 F.3d at 923, quoting *Nelson v. Parks Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir. 1983); *see also Faith Freight Forwarding Corp.*, 1997 WL 159207, at *1 (N.D. Ill. Mar. 24, 1997) ("any factual disputes in pleadings or affidavits are resolved in favor of the plaintiff.").

Bumble submits a declaration form Christopher Rosas, who attests to being the vice president of tax and treasury for Bumble Trading. (Rosas Dec. ¶ 1). Rosas makes several assertions, some of which the record does not contravene. However, the following assertions made by Rosas are in question:

- "Bumble Inc. and Buzz Holdings L.P. are both holding companies that conduct no operating business in any state, including Illinois." (Rosas Dec. ¶ 6).

- "Bumble Trading LLC, Bumble Inc., and Buzz Holdings L.P. do not have any offices or physical assets in Illinois. Nor does it keep any corporate records in Illinois." (Rosas Dec. ¶ 8).

- "Bumble Inc. and Buzz Holdings L.P. do not generate any revenue from Illinois, or elsewhere. It does not market or sell products (including the Bumble dating application) in Illinois or conduct any other business activities or transactions in the state." (Rosas Dec. ¶ 10).

- "Bumble Inc. and Buzz Holdings L.P. did not design the Bumble dating application and it has never owned controlled, operated, or advertised it." (Rosas Dec. ¶ 11).

4

- "Bumble Inc. and Buzz Holdings L.P. have never collected or stored Bumble-user information, including biometric information. Nor has it operated any servers related to the Bumble dating application or Bumble-user information." (Rosas Dec. ¶ 12).

The amended complaint properly asserts a set of facts that directly contravenes these statements. First, the complaint alleges that Bumble's corporate structure is such that Bumble Inc., as a parent company, "operates and controls all of the business and affairs of Bumble Holdings." (Am. Compl. ¶ 12). The complaint also alleges that Bumble Inc., also as a parent company, "directs and controls the operations of. . . Bumble Trading." (Am. Compl. ¶ 19). The complaint further alleges that Bumble Inc., through its wholly owned subsidiaries Buzz Holdings and Bumble Trading, is engaged in extensive business activity including operating the subscription-based Bumble application, employing a global team of employees, and directing marketing efforts targeted at new-customer acquisition. (Am. Compl. ¶¶ 13-18).

These allegations are an accurate and plausible description of Bumble's corporate structure based on information available to the Plaintiff. The complaint extensively quotes SEC filings made by Bumble Inc., describing the operations of the parent company and subsidiaries. (2021 10-K); (Sept. 2021 10-Q). Furthermore, the description of the parent company's operations and those of its subsidiaries alleged in the complaint is consistent with an affidavit filed in May 2021 by Caroline Ellis Roche, the Chief of Staff of Bumble Trading, relating to California-based litigation. (Declaration of Caroline Ellis Roche in Support of Motion for Preliminary Approval of Class Action Settlement at 1-2, Mansour v. Bumble Trading, Inc., No. RIC1810011 (Super. Ct. Cal. filed May 29, 2018)) (*see* **Exhibit A**). The factual allegations contained in the Rosas declaration are contrary to the pattern of operations publicly established by Bumble Inc. and subsidiaries since their creation.

Second, the complaint properly alleges, based on this plausible understanding of Bumble's operations, that all three defendants taken together are responsible for the conduct at the center of this suit. This includes specific conduct including:

- Inducing users in Illinois to upload their photos onto the Bumble application, and deliberately and intentionally collecting biometric identifiers from those photos. (Am. Compl. ¶¶ 27-29).

- Deliberately and intentionally collecting location information for those same users. (Am. Compl. ¶¶ 30-32).

- Purposefully directing this activity towards individuals in the state of Illinois. (Am. Compl. ¶ 33).

- Generating revenue from at least thousands of subscriptions to the Bumble application in the state of Illinois. (Am. Compl. ¶ 34-35).

- Expressly targeting advertisements at consumers in the state of Illinois. (Am. Compl. ¶ 36).

- Engaging in marketing activity that, because of its local geographic nature, is necessarily targeted at Illinois. (Am. Compl. ¶¶ 37-47).

- Employing ambassadors to market and promote the Bumble application in the state of Illinois. (Am. Compl. ¶¶ 49-50).

Accepting the complaint's plausibly made allegations as true for the purposes of this motion would not foreclose on the possibility of dismissing one or more of the defendants from this action in the future, should the court determine it is not responsible for the alleged conduct. However, that would properly occur after the court makes a factual determination, beyond a motion to dismiss. For the moment, it is proper for the court to resolve these factual disputes in favor the plaintiff as the non-moving party based on the well-pled and factually supported allegations of the amended complaint.

### C. Bumble purposefully avails themselves of the forum market by conducting extensive business activity in Illinois.

The first factor of the specific personal jurisdiction inquiry exists to ensure that the underlying contacts of the controversy are "created by the defendant's activity, not the unilateral activity of the plaintiff or a third party" such that "the defendant. . . deliberately reached into the forum state." *Crumpton v. Haemonetics Corp.*, 2022 WL 952744, *6 (N.D. Ill. Mar. 30, 2022), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). This can be satisfied two ways. The first is whether the defendant "purposefully directed his activities in the state," an inquiry usually aimed at natural persons. *Crumpton*, WL 952744 at *6. However, it is also possible to satisfy the factor by demonstrating the defendant "purposefully availed [itself] of the privilege of conducting business in the state." *Id*. This second inquiry, when applied, is dispositive in this case based on both Bumble's marketing efforts and the extensive use of the Bumble app by residents of Illinois.

  i. <u>Bumble's marketing activities alone establish minimum contacts with the forum market.</u>

The Seventh Circuit held in *uBid, Inc. v. GoDaddy Grp., Inc.*, that even a nationwide advertising campaign with no particular focus on Illinois could meet the "purposefully avails" threshold if the campaign deliberately reaches into Illinois. 624 F.3d 421, 428 (7th Cir. 2010). In reaching this conclusion, the court identified facts that were strongly corroborative of minimum contacts: the defendant's advertisements reaching Illinois televisions, advertisements reaching Illinois computers, and physical advertisements present in Illinois. *Id*. The court clarified that the issue is not whether the defendant deliberately targeted Illinois at the exclusion of other states, but rather if it targeted Illinois at all, independent of any targeting of other forums alongside. *Id*.

7

Bumble meets the minimum contacts threshold in this way by deploying a nationwide advertising campaign designed to reach as many people as possible, "including the 13 million potential customers in the nation's fifth most populous state." *Id*. As in *GoDaddy*, Bumble's nationwide internet advertisements appear frequently on screens in Illinois. (Am. Compl. ¶ 51). Bumble has also placed or caused agents to place numerous branded installations in Illinois which are more visible and interactive than the sports stadium advertisements placed by the defendant in *GoDaddy*. (Am. Compl. ¶¶ 37-47). Beyond the facts contained within *GoDaddy*, Bumble employs agents in Illinois to market their app, hosts local events, and partners with local attractions in giveaways. (Am. Compl. ¶¶ 37-43, 49-50). Bumble certainly and purposefully avail themselves of the Illinois market through advertising, therefore maintaining minimum contacts in the forum.

        ii.    Extensive use of the Bumble app in Illinois also establishes minimum contacts with the forum.

*GoDaddy* is also instructive in determining that the widespread use of the Bumble app in Illinois is enough to establish minimum contacts. In *GoDaddy*, the defendant argued that "its sales in Illinois [were] merely the unilateral activity of Illinois residents." *Id.* (internal quotation marks omitted). Additionally, the defendant argued that any sales made to Illinois residents did not take place in Illinois but were "processed automatically by [the defendant's] servers in Arizona," and therefore any contacts occurred in Arizona. *Id*. The Seventh Circuit rejected this argument, denouncing the defendant's "attempt to portray itself. . . as a mindless collection of servers." *Id.* at 427. The opinion then dispatches with the idea that internet-based companies without a physical presence in the forum operate under a different standard:

> Nor should [the defendant's] unusual business model complicate an otherwise straightforward case for sufficient minimum contacts. . .. [A] typical business that operates on a national scale with [the defendant's] sales in Illinois, [the defendant's]

8

>customers in Illinois. . . would unquestionably be subject to personal jurisdiction there for claims arising from its business activities. . . . It would be reasonable for such a company to expect to be sued there. [The defendant's] way of doing business allows it to avoid the type of physical presence that makes these questions easier. . . .. But the fact that [the defendant] can make millions of dollars and recruit hundreds of thousands of customers without the equivalent of International Shoe's sales representatives, Ford's dealerships, or Coca-Cola's distributors is not decisive. . ... What matters is that [the defendant] purposefully availed itself of the Illinois market for its services through its deliberate and continuous exploitation of the market.

*GoDaddy*, 623 F.3d at 429.

Additionally, *Illinois v. Hemi Grp. LLC* is instructive in setting a low and flexible standard for what constitutes conduct initiated by the defendant. In *Hemi*, the defendant online store selling cigarettes did not actively make a first-hand attempt to reach into Illinois, although Illinois residents made purchases on said website. 622 F.3d 754, 757 (7th Cir. 2010). The defendant argued that these contacts were unilateral and not initiated by the defendant, but the Seventh Circuit rejected that argument, identifying several facts strongly corroborative of defendant-initiated contact including: defendant's creation of commercial interactive websites, defendant holding itself open to do business with Illinois residents, and servicing customers with Illinois addresses. *Id.* at 758. Also important to the court's decision was that the defendant, by collecting the zip codes of all customers before their purchase and then sending them confirmations of purchases with zip codes listed, demonstrated that it knowingly did business with Illinois consumers. *Id.* at 757-58. These systematized sales to Illinois cannot be unilateral, even if they appear unilateral taken individually. *GoDaddy*, 623 F.3d at 428 ("[defendant] set the system up this way. It cannot now point to its hundreds of thousands of customers in Illinois and tell us, 'It was all their idea.'"), citing *Hemi*, 622 F3d. at 758-59; *c.f. Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.* 751 F.3d 796 (7th Cir. 2014) (holding

9

that the defendant's website only created unilateral contacts because the website produced sporadic sales and random, non-systematized contact with individuals in the forum state); *Gullen v. Facebook.com, Inc.* No. 15 C 7681, 2016 WL 245910 (Jan. 21, 2016) (holding that the defendant maintenance of offices in the forum does not suffice to show minimum contacts unless the complaint also alleges active market exploitation).

Bumble's business model establishes minimum contacts in this way as well. Like the defendant in *GoDaddy*, Bumble maintains a large customer base in Illinois, including thousands of paying users and other non-paying users. (Am. Compl. ¶ 34). Bumble generated $142.5 million in revenue in the third quarter of 2021 alone, a material portion of that coming from their operations in Illinois, as was also the case with the defendant in *GoDaddy*. (Am. Compl. ¶ 16). Bumble argues that worldwide use of the app precludes the possibility that use of the app in Illinois qualifies as minimum contacts with the forum, because such contacts are unilateral. (Motion at 13). However, Bumble is the one initiating contact, advertising their services and making the app available for download, and advertising their subscription service even after a user has downloaded the app. (Am. Compl. ¶ 34). Not only does the complaint in the instant case allege deliberate exploitation of the Illinois market, but as in *Hemi*, it also describes the exact mechanism through which Bumble is on notice which users reside in Illinois. (Am. Compl. ¶¶ 27-35). The complaint offers further evidence of Bumble's systematic efforts to develop the Illinois market supported by aggressive marketing efforts. (Am. Compl. ¶¶ 36-51). These facts bear more resemblance to the systematic efforts of the defendant in *Hemi* than the passive and random efforts of the defendant in *Advanced Tactical*. This similarity confirms that Bumble meets the minimum contacts threshold established in Illinois.

### D. The conduct at issue in this suit relates directly to Bumble's systematic exploitation of the Illinois market.

The second prong of the specific personal jurisdiction inquiry is that "the alleged injury arises out of or relates to the defendant's forum-related activities." *Rogers*, 996 F.3d at 819. This evaluation of specific jurisdiction requires the plaintiff to show a nexus between the contacts of the defendant and "the particular conduct underlying claims made in the lawsuit." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). The claims central to this suit relate directly to Bumble's extensive contacts with Illinois.

It is important to note here that the Supreme Court clarified the interpretation of "arises out of or relates to" last year in a case in which the defendant Ford Motor Company attempted to argue lack of relation to prevent the exercise of personal jurisdiction over cars malfunctioning in Montana and Minnesota. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.* 141 S.Ct. 1017 (2021). Previously, courts generally read "arise out of" and "relate to" together as redundant phrases setting out a single standard, and as a result required a strict causal connection between the claims and the defendant's contacts with the forum, often holding that in-forum market exploitation did not suffice. *See e.g., McGoveran v. Amazon Web Servs.*, 488 F. Supp 3d. 714, 721 (S.D. Ill. 2020) ("the fact that [the defendant] is registered to do business in Illinois is irrelevant."); *Gullen* 21016 WL 245910 at *2.

The Court's decision in *Ford* served to clarify the difference between the two-phrases stating, "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Ford*, 141 S.Ct. at 1026. Although the court acknowledged that the standard "incorporates real limits," those limits are not relevant when the defendant

11

systemically exploits the forum market. *Id*. As it pertains to *Ford*, the Court specifically recognized advertising as corroborative evidence of relation by market exploitation so systemic that personal jurisdiction is rarely improper. *Id.* at 1028 (stating that "by every means imaginable – among them, billboards, TV and radio spots, print ads, and direct mail – Ford urges Montanans and Minnesotans to buy its vehicles."). Reasoning from this, the Court concluded that "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong relationship among the defendant, the forum, and the litigation." *Id.* (internal quotations omitted).

Here, the claim clearly relates to the conduct in question under the standard announced in *Ford*. Bumble's advertising efforts, which may not have been relevant under prior interpretations of the law, are intimately relevant under the new inquiry. (Am. Compl. ¶¶ 37-51). Just as Ford "works hard to foster ongoing connections to its cars' owners," Bumble works just as hard to foster ongoing use of their app, and to cultivate new customers. *Ford*, 141 S.Ct. at 1028. The market for dating apps is lucrative, evidenced by Bumble's revenue, and competition is assuredly fierce. (Am. Compl. ¶ 16). Bumble serves this market systematically and promotes safety features connected with their acquisition of biometric identifiers as a key reason for consumers to choose them over competitors. (Am. Compl ¶¶ 29, 36, 39). Moreover, as in *Ford*, the plaintiff here sustained the injury in the forum state while operating the defendant's product. Under the standard set forth in *Ford*, there is no question that Bumble's collection of biometric identifiers against Illinois law relates directly to their systematic exploitation of the market in Illinois.

Illinois courts have already deployed the reasoning in *Ford* to clarify the scope of specific jurisdiction. In *Edelson PC v. Girardi*, the Northern District rejected an argument that the specific conduct underlying the lawsuit must take place in the forum state, as that conduct may still be "related to" the defendant's forum contacts even if does not "arise out of" them. No. 20 C 7115, 2021 WL 3033616, at *8 (N.D. Ill. July 19, 2021).

Moreover, *Crumpton v. Haemonetics Corp.* and *King v. PeopleNet Corp.* are two post-*Ford* BIPA suits in Illinois that confirm such a rule applies to this exact circumstance, and in fact stretches further than the facts of the instant case. *Crumpton*, No. 21 C 1402, 2022 WL 952744 (N.D. Ill. Mar. 30, 2022); *King*, No. 21 CV 2774, 2021 WL 5006692 *uBid*. In both cases, the defendants were firms that specialized in devices used by companies to collect and store biometric information from employees and customers as needed, but despite their status as third-party vendors with no direct customer contacts and only attenuated forum activities, their business activities provided grounds for personal jurisdiction. *Crumpton*, 2022 WL 952744 at *2; *King*, 2021 WL 5006692 at *2. In *Crumpton*, the court held that a BIPA claim was related to the defendant's conduct because the defendant "knowingly stored Illinois residents' data. . . for financial gain," and in doing so "deliberately exploited the biometric collection market in Illinois." *Crumpton*, WL 952744 at *9. In *King*, the court found that the defendant's "conduct in the Illinois biometric information market led to it capturing [plaintiff's] biometric data in Chicago," and that the plaintiff's "BIPA claims arise directly out of [the defendant's] biometric information business in Illinois." *King*, WL 2021 WL 5006692 at *7.

Bumble's contacts in Illinois fit with this new line of cases to establish systemic exploitation of a market. Bumble's advertisement of safety as a key differentiator for their product, and collection of biometric data from users for verification is an aspect of that. (Am. Compl ¶¶ 29, 36, 39). Bumble, alongside the defendants in *Crumpton* and *King*, is in the biometric data market in Illinois, and therefore Bumble's BIPA violations relate directly to the underlying contacts.

*Ford* and its related Illinois case law also calls into question the precedential value of 12(b)(2) rulings made prior to the *Ford* decision (and cited by Defendants). The opinion in *King* explicitly states that in regard to cases "decided on a strict theory of but-for causation, the Supreme Court has undermined that rationale." *Id*. at *6 n.9, citing *Ford*, 141 S.Ct. at 1026-30; *but see GoDaddy*, 623 F.3d at 430 (establishing a *quid pro quo* test in Illinois law that comports nicely with the central holding in *Ford*, stating that businesses benefiting commercially from operating in a forum naturally open themselves to personal jurisdiction); *Rogers*, 996 F.3d at 820 (holding that *Ford* affirms the idea of "reciprocal obligations" first presented in *GoDaddy*).

*Gullen* is one such case. In *Gullen*, the complaint specifically called out the defendant's sales and marketing offices in Illinois. 2016 WL 245910 at *2. However, the defendant's nationwide capture of biometric identifiers did not arise directly from their Illinois operations, and therefore the court refused to consider those contacts. *Id.* However, under the reasoning in *Ford*, the plaintiff could have alleged that the defendant engaged in systematic exploitation of the Illinois market, and that their biometric data collection was strongly related to that market exploitation. The central holding in *Gullen*, therefore, turns on the fact that the plaintiff did not have anything other than but-for

14

causation theories available under Illinois law. *Gullen* is therefore at odds with the Supreme Court's ruling in *Ford* and does not hold precedential value in the instant case.

### E. Bumble would not be overly burdened by this litigation.

The third prong is an escape hatch to ensure that courts do not "offend traditional notions of fair play and substantial justice." *Hemi*, 622 F.3d at 759. More specifically, this ensures that defendants are not overly burdened by requirements to appear in Illinois courts. *Id*. Even then, deployment of this factor is meant to be sparing. *Id*. Although the third specific personal jurisdiction factor leaves open the possibility that a court may find a case for personal jurisdiction lacking despite evidence for the presence of the other two factors, this exception to the rule is narrow, and certainly does not apply in this case.

Bumble, as a sophisticated defendant, is not overly burdened when Illinois hales it into court. Bumble argues that because it has no physical presence in Illinois, it could never have anticipated anyone haling it into court here, and therefore subjecting it to this suit would be unfair. (Motion at 16-17). However, Bumble is a multi-national corporation with a nine-figure operating revenue that specifically targets and profits from the Illinois market. In fact, while Bumble attempts to raise this argument in their brief on the grounds it has no offices or officers in Illinois, it notably fails to argue that being subject to this suit will burden their operations in any way beyond mere inconvenience.

### IV. CONCLUSION

At this stage, the Plaintiff has provided all necessary factual allegations to establish personal jurisdiction over all defendants. The Plaintiff respectfully asks this court to deny the instant motion and allow the suit to proceed.

Dated: July 11, 2022

*/s/ Katrina Carroll*
Katrina Carroll
Kyle A. Shamberg
**LYNCH CARPENTER LLP**
111 W. Washington Street - Suite 1240
Chicago, IL 60602
Phone: (312) 750-1265
Fax: (312) 212-5919
Email: katrina@lcllp.com
kyle@lcllp.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**

## **CERTIFICATE OF SERVICE**

I, Katrina Carroll, hereby certify that on July 11, 2022, a true and correct copy of the foregoing was served by CM/ECF on all counsel of record.

By: */s/ Katrina Carrol*